Case number 23-1157, Saad Bin Khalid Petitioner v. Transportation Security Administration and David Potapovsky, Administrator, Transportation Security Administration in the Office of Capacity. Mr. Abbas for the petitioner, Mr. Waldman for the respondents. All right, Mr. Abbas, good morning. Good morning, Your Honor. May it please the Court. With the Court's permission, I'd like to reserve three minutes for rebuttal. This case belongs in district court. It belongs in district court for the exact same reasons that the Ninth Circuit found that similar claims belonged in district court. That's because this challenge is a challenge to what the Terrorism Screening Center did, not a challenge to what the Transportation Security Administration did. It was the Terrorism Screening Center that put Saad Bin Khalid on the no-fly list. It was the Terrorism Screening Center that put him on the watch list. And it was the Terrorism Screening Center that decided to use constitutionally inadequate procedures and processes and standards to place him there and keep him there and impose. But what entity was sued? The Terrorism Screening Center, Your Honor, was sued. The Transportation and Security Administration was also sued, Your Honor. But the reason the Transportation and Security Administration was sued is because many agencies form the core of the federal government's government-wide watch listing system, and TSA is one of those agencies. But, and my colleague on the other side will confirm this, the Transportation Security Administration did not place Saad Bin Khalid on the watch list. They did not place Saad Bin Khalid on the no-fly list. And even after the TSA administrator made a decision to keep him on the list, look at, there are many complaints, Appendix 18, Paragraph 56. Even outside of the DHS TRIP process, the Terrorism Screening Center reviews its listings. It makes decisions to change those listings, to upgrade them, to modify them, or to remove them altogether. So let's back up a little bit and talk about the court's jurisdiction. Yes, Your Honor. We're here on a review of a final order, so we have exclusive jurisdiction of reviewing that final order. So with that in mind, that's a final order of TSA, correct? Your Honor, we were transferred here, so that's why the petitioner of review is before the court, because against our will, we were compelled to, yes. The judge asked, is we have exclusive jurisdiction over the TSA's final order, is that correct? And your answer to that is? Yes, Your Honor. We don't challenge it at all in any kind of way. We don't challenge the TSA administrator's order. And the TSA administrator's order does not get at the core of what we're challenging, because the TSA administrator did not consider the constitutional sufficiency of the no-fly list inclusion standard when it was making its decision. But if we have jurisdiction over TSA's final order, you don't believe that that encompasses all of the things that you're mentioning? You think it only is the challenge of the no-fly list? Your Honor, it's not even only a challenge of the no-fly list. The limitation that the jurisdictional statute places on this court is to affirm, modify, or set aside the specific individual order. So, for example— It doesn't require other proceedings to be conducted. I'm sorry, Your Honor? It doesn't require other proceedings to be conducted, correct? Your Honor, whatever additional demands that the court makes of the government's record here, it's limited to just changing the order. So, for example, the court finding a constitutional infirmity in the no-fly list inclusion standard that governs to conduct further proceedings, it also says the court may grant interim relief by staying the order or taking other appropriate action when good cause for its action exists. Your Honor, I think it's cabined and limited to just the order at issue. And here, the order at issue would be the TSA administrator's single moment-in-time decision to maintain him on the list. That decision did not reflect— To make the record clear, the list you're talking about is the no-fly list? Is the no-fly list. And, Your Honor, as your, I think, question implies, the TSA administrator has nothing at all of any kind to do with the watch list itself. And so, at best, you're fracturing the case into two pieces. Okay, but let's cabinet to just the no-fly list portion and not all the other claims. What does that mean, then, for our review here? Because, yes, TSA has the final order about the no-fly list, but, of course, TSA, as you indicate, did not make the decision. TSC did. So, then, help us with what we're actually reviewing if we also know in that review that another agency participated in that process. Yeah, I think what we're asking for, Your Honor, in this case and its companion, is to be sent back to the district court in its totality and for the court not to reach the merits of these issues. But I'm asking you, what are we reviewing? Yes. That is the process. The only— It's a multi-agency process that gets you to that point of the no-fly list in the first place. It's not a multi-agency process, Your Honor. It's not a multi-agency that more than TSA might make the decision, but others could participate in the process of how it eventually gets there. We would assert, Your Honor, that the court should focus on who has the authority to decide who's listed and who's not listed. And at all times, it's the Terrorism Screening Center that has the authority to do that. At one— That's the FBI? Yeah, the Terrorism Screening Center is just a department of the FBI. It has no independent corporate identity. It's just FBI employees that are running the Terrorism Screening Center. And the Terrorism Screening Center is just not mentioned in 46.110. And so, the decisions that we're challenging are non-46.110 agency decisions. And that's why, Your Honor, the best response to this petition of review landing in this court is to send the whole thing back to the district court. And— Reviewing other agency decisions—and when I say we, I'm talking about D.C. Circuit—we can look at the antecedent legal determinations that bring you forward to that final decision. So, do you not think that that's possible here? Certainly, Your Honor, it's relevant to the procedural due process claim, what the existing procedures are, and how those existing procedures work, and what the outcome of the TSA administrator would reflect, in some case, what that process was like. We think that a review of the process as it is, it cuts our way, if you reach, Your Honor, the procedural due process claim itself. How can we—how could we review the terrorist watch list claims, the process leading to placement, which does ultimately lead to the no-fly list, the presence of Kala's name on no-fly list? How can we review that, though, when our special statutory jurisdiction extends only to the TSA administrator and not to the Federal Bureau of Investigation? Exactly, Your Honor. It's unworkable. The reviewing just a part of the—an eensy-meensy part of Simon Kala's watch list case makes no sense, and it would fracture the case into many pieces. It's just the case, Your Honor, that we're not challenging what the TSA administrator did. That's not the whole case at all. What we're challenging is what the Terrorism Screening Center did. And the Terrorism Screening Center did what it did years before the DHS trip ever— But even under your theory, if this was to go back to district court, how do you not implicate this decision, like the district court somehow, in all its review of all of your other claims, having to somewhat potentially undo what TSA did in terms of the no-fly list? Your Honor, I think if you send this case back down, we're going to find in discovery that the only thing the TSA administrator did was a ministerial task of reproducing the Terrorism Screening Center's decision to keep him on the no-fly list. And subsequent to the TSA administrator's decision, the Terrorism Screening Center has been making a decision every couple months to keep him on the no-fly list. And so even if you're looking at it technically and saying the TSA administrator did something, the Terrorism Screening Center, they also made decisions to keep Saad bin Khaled on the list, as they do for all U.S. persons periodically. And, Your Honor, I'll save the balance of my time for further questions. But aren't you — isn't the claim challenging not the evidence that was present that the Screening Center looked at in making the initial decision? You're looking at now the current state of the evidence and whether maintaining him on the list is unconstitutional. And the relief that you're seeking for your client is focused on taking him off the list. So that — why is that not in the hands of TSA and TSA administrators? TSA, so long as DHS TRIP is not invoked, TSA has no role in deciding who is or who is not on the no-fly list. They can't affirmatively take somebody who's not on the no-fly list and put him there. Outside of the DHS TRIP process, they can't themselves. Right. But the TRIP process was invoked. And I understand you have an argument that he had no interest in invoking it. He was kind of shepherded into it and through it by the district court and the defendant. But, Your Honor, we have a very specific, you know, fact-based allegation here that the evidence that the government used is false. And so that's, you know, one part of it. But another part is that the inclusion standard, which TSA administrator has nothing to do with, they didn't — they just — taking it from the Terrorism Screening Center and applying it to Saad bin Khalid. The challenge is to that standard, too, Your Honor, and that has nothing to do with the TSA administrator's decision. In fact, the TSA administrator's decision doesn't even reflect that the decision — that that kind of claim, that constitutional substantive procedural due process claim, was considered in the first place, Your Honor. If there are no further — yes? When there is a final order in place, I would think generally the circuit courts, and I'm not talking about just ours, would feel like they're the ones who have the exclusive jurisdiction and would not send something back, would not remand. I'm just trying to think about a broader principle here. Are we creating something here, or are you just trying to be fact-specific to your case? No, Your Honor. I think here you're dealing with just USC 46110. USC 46110 only applies to the FAA and the TSA. And so you're casting a wide net. This is basically a statutory interpretation of 46110, and that statute decades before the watch list ever came into existence and could not contemplate something like this arising. And with that, Your Honor. Mr. Buss, you've mentioned this sort of periodic and ongoing reassessment of the placement on, I guess, both of these lists, but the watch list and the no-fly list, by the TSC. What's your support for that, and did you raise that in your brief? Your Honor, that's in the amended complaint, that's paragraph 56. I couldn't point you to a specific place in the briefs where we raised that issue, but we broadly discussed the authorities of the Terrorism Screening Center as having at all times the authority to place, remove, modify a person's watch list status. And so I think here what you're getting from that fact is more non-46110 agency orders that encapsulate an appropriate target for the plaintiff's claims. Thank you, Your Honor. All right, we'll give you a couple minutes to reply. Mr. Waldman. Good morning, Your Honors. Petitioner's claims are foreclosed under this circuit's precedence. Under BUSIC, this Court has already held that exclusive review over petitioner's challenges to TSA's final order maintaining him on the no-fly list belongs in the Court of Appeals, not in the District Court. And what does that mean? Okay, that means... What are we reviewing? When you go through the redress process asking for relief from the no-fly list, ultimately at the end of the process comes a TSA final order maintaining you on the no-fly list. The petition for review challenges that order. And I understand that, but I'm asking specifically what are we able to review to make a determination one way or the other as to whether or not TSA was correct. You can review the record which is filed in this Court, including the ex parte record, and determine whether or not it met the substantive standard under, we think, a very highly deferential standard. And you can also review the procedures for compliance with the due process clause. Those are the claims that are presented here. Whose procedures? TSA's procedures, which include things... Which is sort of the heart of the matter here, which is where the status on the no-fly list is given to the plaintiff and an unclassified summary of reasons and an opportunity to respond to those reasons. And then ultimately TSA makes the final decision. Before this Court even... So that's all the antecedent legal determinations, the whole factual record, everything that got to the... Factual, yes. The whole factual record can be reviewed by this Court ex parte. So what do you understand your opposing counsel meaning when he believes that this should go back to the district court? What could the district court do differently than we could? Well, I don't know that the district court had... It definitely does not have jurisdiction over the TSA final order. This Court has already held that in BUSIC. What I understand him to mean is that what he wants to challenge or thinks that he's challenging is a TSC decision that he thinks occurred years ago to put him on the no-fly list in the first instance before he ever sought redress. So wanting discovery and all of that? Precisely. Now we have, as you know, there's a second case in which the district court said, you know, all the remaining claims other than the challenge to the TSA order were dismissed for various reasons. And we can talk about the jurisdiction over that purported claim there. And I would like to sort of address the merits to the TSA order. But I will say just briefly that I think that, number one, I don't think that claim exists. Certainly, he went through the redress process. And Judge Pillar, I think just to clarify, he initiated the redress process on his own voluntarily before filing the complaint here. The shepherding that you referred to was he, in the middle of that process, after he had received notice of his status on the no-fly list, he ended that, he tried to end that process and then go directly to district court in the middle of the redress proceedings and bring a challenge there. And the district court just said, no, let's just like finish the process and get a final order. And that's sort of all the district court did. Oh, go ahead. Oh, and then I was going to say, and then he amended his complaints to challenge that order. And under cases like Royal Cannon and Rockwell, the operative complaint is the amended complaint that the plaintiff voluntarily files that can either create or destroy jurisdiction. And in this case, it said what the challenge effectively became was to the TSA final order at the end of the redress process. So in your brief at page 24, you have an argument about why the challenge is about the TSA administrator's order and not about the terrorist screening center's initial placement. And you basically argued that the initial placement decision has really been superseded in terms of legal effect by the TSA administrator's order. I think that's correct. Yes, your honor. And in fact, that the initial decision is not really final agency action because the most recent action that causes Mr. Kala's remaining on the no file list at least is the TSA's order. That's right. And Darby speaks to this point, which is whether or not you are required to seek agency redress, if you voluntarily do, then any prior order becomes non-final. And what the final agency action would be is the determination by the agency at the end of that process, which here would be TSA's final order. So the question I have then though is that as I read the record, there is in fact a regular process of the screening center re-examining the individual's placement, a U.S. citizen's placement on the terror watch list and on the no file list. And given the amount of time that has elapsed since the TSA administrator's order, there have been successive determinations by the bureau, by the FBI that have confirmed Mr. Kala's placement on these two lists. So why isn't the same reasoning that you rely on in your brief at page 24 about the TSA order being this sort of superseding and therefore operative and final determination? Why doesn't that also apply and make now the actions of the Terrorist Screening Center really the operative determinations? Oh, well, first of all, I think what Darby speaks to is when a plaintiff initiates that process, then it becomes non-final as to them because of their request for reconsideration. It doesn't speak to if an agency sort of decides to take a fresh look on its own that it sort of invalidates. Isn't that as a matter of real world decision making? You know, we know from the records that the Terrorist Screening Center does in fact regularly review the TSDB listings and the no JA-59, which talks about Terrorist Screening Center biannual review and also JA-57. And in the deferred appendix, there are references at JA-178. We don't dispute that point. But I think that as a practical matter, you have to have a court focusing on a certain fixed record in order to make a decision. Because if the alternative would be every six months, the record changes, and the case goes back to square one. And obviously, that's not a practical situation. And so that's why we think that, first of all, redress is important to the process because it builds that record for the court to review. And you can only ever review one snapshot in time. And in fact, that's why, you know, there could be perspective relief in a case if you thought it was appropriate. But the court could never do something that said, you know, we don't know what the record is going to be in the future, but we say you can't put him back on a list or he can't be on a list based on some future record. You can only, you know, take a snapshot in time. And... So I'm just trying to, I'm also looking at our decision in Muharram versus TSA and trying to sort of square that with what you're saying that, you know, once the redress process is complete and the TSA issues a final order, we said the TSA continues to independently review the no-fly list as a matter of course. The TSA's independent removal in that case of Muharram from the no-fly list supersedes any legal effect of the TSA administrator's prior final order. And so there's, so if the Terrorist Screening Center changed the listing, that would supersede, but it's only because it's maintaining that it doesn't? Essentially, yes. I mean, I think what happens is if this is, Muharram is a situation in which someone was on the no-fly list at the beginning of the litigation, litigation proceeded, and then he was removed from the no-fly list. And in that particular instance, the court held that it was moot. In other circumstances, courts have held it's not moot. But I think it's important for the court to know, like, if the actual decision changes and TSA issued a letter saying that its decision was superseded by this removal. And then, so it's not just a review, a check of a static record or maybe even a changing record, but a 180-degree change in the decision-making. So of course we needed to alert the court to that. And then it was really just a matter at that point of not whose decision are you reviewing? You're not reviewing any decision because the case had become moot and no one challenges their removal from the no-fly list. They challenge their maintenance on the no-fly list. But in a sense, the case has become moot here because there have been subsequent determinations. And it seems to me material in the sense that, you know, if his claim is A, there never was any information, or B, the information is stale, or C, the information that you had maybe plausible has been disproved. You know, there seems like the passage of time and the re-evaluation matters. Well, I certainly don't think it makes it moot. I mean, he claims it. Why doesn't it make, well... He claims his injury is that he can't fly and he still can't fly. But it's not the final say on that matter. It may not... He's consistent with it. Well, he... But it isn't actually... A final decision. Again, Your Honor, if that's how you wanted to look at it, you would never have a final decision because there's always intelligence coming in and people are always... There's scheduled periodic reviews. And if new intelligence is developed in between those, you might re-evaluate, it might bolster it, it might undercut it, but you'd never have a decision to review. That's just the nature of intelligence types of decision-making. But what courts do in these situations is they take a snapshot of time because you're challenging an order and an order makes a determination based on the record that existed at that moment in time. And I just think you'd never get to review if you had to start again each time like one new additional piece of information came across the intelligence community's desk. That makes sense. So what if Mr. Hall had filed a new case or amended the complaint and said, actually now I'm challenging the intervening determination by the Terrorist Screening Center to... With all the information that comes to it from throughout the government, that's the decision that I think is causally keeping me where I am. Yeah. I think our view would be what you really should do in this situation is you can always file every time you have an incident at the airport, at the border, if you encounter some kind of problem, you could file a new redress claim. There's no limit to this and you could start anew if you think that there's some new information and they should review it. Anytime you have an encounter, and the same parts of the record you were pointing to before say this, anytime you have an encounter as defined by the agencies, they re-review it at that point too, which is another reason why you have to have at some point a final decision that you're going to review. So I think you covered this with Judge Childs, but it's your position that even though TSA does not maintain the underlying database, if there were procedural or substantive due process or religious freedom concerns or problems, defects in an individual's placement and or maintenance on the terror watch list, that those could be challenged through a suit against the TSA? Once you go through the redress process and have a final order, yes, we think that you would be able to review both the substance of the decision and the adequacy of the procedure in this court. And I think you could, the RFRA claim I think would fall under that as well. How could the individual get relief where the TSA doesn't have authority to undo what might be the source of the defect, the placement on the underlying terror watch list? Oh, I think it does have authority to do this. The whole point of an order, if the order is to remove the person, it's effectively an order to TSA to then take them off, like uncheck the box for the no-fly list, so they're not on the no-fly list anymore. And TSC is going to follow what TSA's ordering. Not the underlying terror watch list. That's a different standard, right? A different standard. And I'm saying if that's the source of the problem, if somebody was, you know, they thought Ted Kennedy, the Senator, was Ted Kennedy, the IRA, you know, member, and Ted Kennedy goes through this and they're like, you know, nope, you're the right person, like, then he brings a suit and says, it wasn't TSA that made the mistake. They just took the information from the underlying watch list. And can you remedy that mistake? Well, the watch list is something different. I know. That's what I'm asking you about. Can a suit that's challenging a TSA administrator's reach an error that was not made by TSA? Well, no. No, right? No. And until- So who does that? What suit and what court- Right. I mean, we're kind of getting into, like, the second case, which is about the watch list cases. But I'm happy to do that if you want. But I did want to actually address some of the merits of the no-fly list order. I can hold on to that. Okay. I promise you I will get to that in the second case. But I just wanted to ask real quick. Sure. The DSH trip, did I hear you to say that you don't think exhaustion is required? Well, they don't think exhaustion is required. There's a Sixth Circuit case called Shearson, which, as a prudential matter, you should exhaust. I think that once you- definitely once you start down the road, I think that you effectively have to exhaust because once you start that redress process, even if it's voluntary, the prior decisions are all now non-final. So once you- if you sort of give up in the middle, now you have no final order to challenge. So effectively, you do have to. And I think- Is that why you all requested to stay, then? Yes. I mean, in part, yes. I mean, I just think it's- once you start down that process, you're going to want to build a record. And that part of what you do in the redress process is if the person does not get relief, you now have a record that the court can review. And so it's important for the court. It's important for the litigants. And also, you never know. Somebody may get relief. And I think it's important to play out that process. Here, I think that the- I just want to make the points real quick that we think that, as the Ninth Circuit held in Kashem, that the process complies with due process. This court has a long line of cases with Jifri, People's Mahajanuddin, National Councils of Resistance of Iran, Velo, Zavaios, Jibril. You can go on and on that say the court can review a classified record ex parte that is part of the due process analysis. It's particularly- it complies with due process when you provide an unclassified summary. But even in some cases where you can't, like Jifri, the court has still upheld that process. And we think that that line of precedent squarely applies here. And I do also want to just briefly address the RIFRA claim, if I could. We think, as we say in a brief, we think that there's no standing for that because there's no plans, no imminent plans to travel for Hajj. I also just want to point out something that may not be immediately apparent in the record, which is that it's not clear what the obstacle is. It's implied that he can't fly from the U.S. to go on Hajj, but he's not actually, does not currently reside in the United States. He resides in Pakistan. And his real claim seems to be that if he loses his passport, it will take him longer to get a replacement, which does not seem to me to be a substantial RIFRA claim, or that other countries might not want him to fly or admit them to the countries. But that's not- there's no standing for that because those are third-party decisions from other countries. We think just, and even if you address it on the merits, we think that BUSIC has already held that there are no less restrictive means for the government to further its compelling interests, that the no-fly list meets that standard. It didn't specifically do it in the RIFRA context, but it just sort of assumed if that standard applied, the no-fly list meets that standard. If there are any other questions on the All right. We'll hear from you in the next case. Okay. Thank you, Your Honor. Take two minutes. Thank you, Your Honor. Just three quick points. One about the court's decision in BUSIC, a second about what orders the court should look at, and a final point about exhaustion. With regards to this court's recent decision in BUSIC, it just was a different claim that the court had there. In BUSIC, the court was dealing with a, quote, TSA redress procedure challenge. That's exactly what they were dealing with. The allegation was that BUSIC contends that the TSA's redress procedures violate due process, whereas for us, our procedural due process claim works differently. The brunt of our claim is that it's the deprivation is then being listed, and then it's the inclusion standard, it's the process of the listing itself that caused the illegal conduct. Second, Your Honor, the government's acknowledging that there's orders before the TSA administrator's orders, and there's orders after the TSA administrator's orders, and he just wants you to look at the one in the middle for some reason. But, Your Honor, the important order is that first one. It's the one that placed him on the watch list, on the no-fly list, that resulted in his name being populated in all these databases across the federal government. That, Your Honors, you couldn't use 46.110 to order the expungement of those records or the amendment of those records after a finding that his watch list placement was illegal. And finally... You're saying, are you agreeing with what I took Mr. Waldman to be saying, which is you can use the challenge to the TSA administrator's order to challenge the defect in the initial placement? No, Your Honor. No, absolutely not. To the extent that he's saying that, do you disagree? Yes, absolutely, Your Honor, because the TSA administrator is just adopting the standards and information that it's getting from others. But he says we can look through that, look at the underlying record. Well, you can't. The TSA administrator did not consider the constitutional adequacy, at the very least, of the inclusion standard. And here we have a clean claim that the inclusion standard, the no-fly list, fails strict scrutiny and is not the least restrictive means. And the best evidence of that is that people on the no-fly list are allowed to fly all the time. And the final point is just on exhaustion. Exhaustion is not an option. When the no-fly list are allowed to fly all the time? Yes, Your Honor. There's a waiver process that the government uses, and that waiver process arose because people would leave the country and they would find themselves on the no-fly list because of where they traveled to and they'd be stranded abroad. And the outrage and the courtroom reactions to that, I think, led to that process being established. It shows that there is a way to allow this category of people to fly safely. And then finally, just on exhaustion, Your Honors, your hands are tied by Darby v. Cisneros. Darby v. Cisneros says explicitly that you can't require exhaustion unless specific conditions are met. Those conditions are not met here because, A, there's no regulation in DHS TRIP that requires exhaustion, and the statute creating DHS TRIP itself also doesn't require exhaustion. Without those two conditions, you cannot require exhaustion prudentially or any other way because of what Darby v. Cisneros says. And the injuries that your client has pleaded that are unique to the watch list as distinct from the no-fly list are what? The application of his wife's immigration status as well as because of his watch list status, anytime he crosses the border, his electronic devices will be searched. And that's just a function of his watch list status and not anything that he's doing at the border. And the reason that Sixth Circuit case came out that way, Shearson, is because there wasn't an APA claim in there. Because the Sixth Circuit in Shearson was not dealing with an APA claim, it could apply prudential concerns. But here, in this case, we have the APA claim. Darby v. Cisneros means that there's a strict means and conditions that they have to apply for. Thank you, Your Honor.
judges: Henderson; Pillard; Childs